IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FABIAN SANTIAGO, # B-79716, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-cv-989-NJR |
| | ) |
| TYLER A. BRADLEY, | ) |
| ROBIN ROWALD, | ) |
| CINDY MAYER, | ) |
| LARISSA WANDRO, | ) |
| LORI OAKLEY, | ) |
| ALEX JONES, | ) |
| JACQUELINE LASHBROOK, | ) |
| MELISSA PHOENIX, | ) |
| JOHN BALDWIN, | ) |
| and JOHN/JANE DOE #1 & #2, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, an inmate currently incarcerated at Hill Correctional Center ("Hill"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose while he was confined at Menard Correctional Center ("Menard"). Plaintiff claims that a publication he had ordered was improperly withheld from him and destroyed, and that three items of legal correspondence were improperly opened outside his presence. The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.

28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

On December 7, 2016, Plaintiff was notified that C/O Bradley was confiscating Plaintiff's "prison legal news" publication dated November 2016. The reason for the confiscation

was that the publication depicted and/or outlined statements of prisoners who were on hunger strikes. (Doc. 1, p. 2). Plaintiff immediately submitted a written appeal of Bradley's decision, and included a statement outlining why the confiscation of his reading material was unlawful. Plaintiff also requested that the publication be preserved so that it would be available if Plaintiff needed to pursue a grievance or litigation over the matter. Plaintiff also submitted a grievance challenging the confiscation and arguing that the material did not present a security concern. *Id.*

Plaintiff soon learned that his appeal paperwork was supposedly never received by the officials who should have reviewed it, and as a result the publication was destroyed. (Doc. 1, p. 10). Plaintiff argues that but for the "blatantly unlawful policy, practice, and [custom]" of confiscating publications containing "statements of hunger strikers," his reading material would not have been confiscated or destroyed. (Doc. 1, p. 2). Plaintiff alleges that Rowald (counselor), Wandro (grievance officer), Jones (acting warden), Phoenix (Administrative Review Board ("ARB") member), and Baldwin (Director of the Illinois Department of Corrections ("IDOC")), all collaborated in "allowing and refusing to take corrective action concerning the implementation of" the policy/practice that led to the confiscation and destruction of Plaintiff's reading material "when sitting in review of the plaintiff's grievance" over the confiscation. (Doc. 1, p. 2).

On January 18, 2017, Plaintiff received "legal correspondence" from an attorney in the West Town Law Office. (Doc. 1, pp. 3, 17). The attorney's (and law firm's) return address was printed on the outside of the envelope, which Plaintiff claims clearly identified it as a legal communication. John/Jane Doe #1 (mail handler) and John/Jane Doe #2 (mailing supervisor) opened and inspected the correspondence outside of Plaintiff's presence, and refused to classify it as "legal mail." It was processed as regular mail and delivered to Plaintiff. Plaintiff submitted a

grievance over the incident, which was denied because the envelope was not "marked with the magical words of privileged/legal mail." (Doc. 1, pp. 3, 18). Meyer (counselor), Oakley (grievance officer), Lashbrook (warden), Power (ARB member), and Baldwin each reviewed and denied Plaintiff's grievance in turn.

On February 1, 2017, a similar incident occurred. This time, Plaintiff received a letter from the Hamilton Law Office which had been opened, inspected, and presumably read by John/Jane Doe #1 (mail handler) and John/Jane Doe #2 (mailing supervisor). (Doc. 1, pp. 3, 23). It was processed as regular mail (not legal mail). Plaintiff's grievance over the opening of this letter was denied by Meyer, Oakley, Lashbrook, Phoenix, and Baldwin, on the grounds that the envelope was not marked as "privileged/legal mail." (Doc. 1, pp. 3, 25). Plaintiff contends that because the envelope contained the return address of a law firm, it should have been treated as legal mail.

On February 21, 2017, a package from the Moran Law Group was delivered to Plaintiff. It was clearly marked, "ATTORNEY/CLIENT CORRESPONDENCE, OPEN IN INMATE'S PRESENCE ONLY." (Doc. 1, pp. 4, 24). Despite this labeling, John/Jane Doe #1 (mail handler) and John/Jane Doe #2 (mailing supervisor) had opened the package and presumably inspected and read it. The package was taped back together, and was processed as legal mail, requiring Plaintiff to sign for it upon receipt. Plaintiff asserts that these 3 incidents "demonstrate a systematic pattern" of mailroom staff indiscriminately opening, inspecting, and reading his legal mailings in spite of their clear identification as privileged material. (Doc. 1, p. 4).

Plaintiff submitted a grievance over the opening of the Moran Law Group package. Meyer, Oakley, Lashbrook, Phoenix, and Baldwin denied the grievance and refused to take corrective action. *Id.*

Plaintiff adds that he is a "known litigator (so-called jailhouse lawyer)" who has brought a "large volume" of cases against prison officials over the last 20-plus years. (Doc. 1, p. 4). Based on that activity, Plaintiff believes his correspondence has been targeted for interception and review outside his presence, in order to glean information about his litigation strategies and plans. (Doc. 1, pp. 4-5). He further complains that his efforts to obtain the identity of the mailroom staff (Does #1 and #2) have been thwarted by IDOC officials.

Plaintiff seeks preliminary and permanent injunctive relief to prevent future confiscation of publications containing hunger strike information, and to prevent the improper opening of his legal mail outside his presence. (Doc. 1, p. 5). Plaintiff has not filed a motion asking the Court to consider the injunction request. He also seeks monetary relief.

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:** First Amendment claim against Bradley for confiscating Plaintiff's "prison legal news" publication without reasonable justification, and against Rowald, Wandro, Jones, Phoenix, and Baldwin for failing to take corrective action in response to Plaintiff's grievance;

**Count 2:** Claims against John/Jane Doe #1 (mail handler) and John/Jane Doe #2 (mailing supervisor) for improperly opening and inspecting 2 letters from law firms and 1 package from Moran Law Group, and against Meyer, Oakley, Lashbrook, Power, Phoenix, and Baldwin for failing to take corrective action in response to Plaintiff's grievances.

As explained below, Count 1 shall proceed for further review against Bradley only. Count 2 fails to state a claim upon which relief may be granted and shall be dismissed.

**Count 1 – Confiscation of Reading Material**

The freedom of speech protected by the First Amendment is not merely freedom to speak; it is also freedom to read. *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638-39 (7th Cir. 2005) (citing *Stanley v. Georgia*, 394 U.S. 557, 564 (1969); *Lamont v. Postmaster General*, 381 U.S. 301, 306-07 (1965)). While inmates do not lose their constitutional rights upon being confined in prison, some restrictions on those rights may properly be imposed by prison authorities. In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. On the other hand, "the arbitrary denial of access to published materials violates an inmate's first amendment rights." *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (quoting *Martin v. Tyson*, 845 F.2d 1451, 1454 (7th Cir.) (per curiam), *cert. denied*, 488 U.S. 863 (1988)).

*Turner* outlined four factors which courts must consider in evaluating whether a regulation restricting prisoners' rights is sufficiently reasonably related to legitimate penological interests to withstand constitutional scrutiny: "(1) the validity and rationality of the connection between a legitimate and neutral government objective and the restriction; (2) whether the prison leaves open 'alternative means of exercising' the restricted right; (3) the restriction's bearing on the guards, other inmates, and the allocation of prison resources; and (4) the existence of alternatives suggesting that the prison exaggerates its concerns." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (citing *Turner*, 482 U.S. at 89-91).

In this case, Plaintiff argues that Bradley's confiscation of his "prison legal news"

publication was unlawful in light of the precedent above. He asserts that the hunger strike material contained in it did not pose a threat to prison security. Further factual development will be necessary in order for the Court to evaluate whether the prohibition of this material was reasonably related to legitimate penological concerns, or whether the confiscation was unjustified or arbitrary. Therefore, the First Amendment claim against Bradley in **Count 1** shall proceed for further review.

The other Defendants, however, shall be dismissed from this claim. The Complaint reveals that Rowald, Wandro, Jones, Phoenix, and Baldwin took no part in Bradley's decision to confiscate the "prison legal news." Their only role was to respond to the grievance Plaintiff filed after Baldwin refused to allow Plaintiff to have the publication. While it is true that one or more of these officials might have reversed Bradley's decision after the fact as part of the grievance process, in order to be held liable in a civil rights case, an official must have been "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). As such, the alleged improper denial or mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). For these reasons, Rowald, Wandro, Jones, Phoenix, and the individual-capacity claims against Baldwin shall be dismissed from **Count 1.**

Because Plaintiff is seeking injunctive relief, Baldwin shall remain in the action in his official capacity only. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

### Dismissal of Count 2 – Opening of Mail from Law Firms

Plaintiff lumps together the three incidents when his "legal mail" was opened, in order to argue that Defendants have engaged in a pattern of wrongfully inspecting and reading his correspondence from attorneys. Only the third example demonstrates improper handling of privileged communication from an attorney, however, and a single instance does not rise to the level of a constitutional violation.

> Inmates have a First Amendment right both to send and receive mail, *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974); *Rowe*, 196 F.3d at 782. An inmate's legal mail, however, is entitled to greater protections because of the potential for interference with his right of access to the courts. *Rowe*, 196 F.3d at 782. Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a *warning that the letter is legal mail*, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence. *See Wolff*, 418 U.S. at 577, 94 S. Ct. 2963; *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304, 305-06 (7th Cir. 1993).

*Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005) (emphasis added). Notably, "isolated incidents of interference with legal mail" may not state a constitutional violation without a showing of "a systematic pattern or practice of interference," *see Bruscino v. Carlson*, 654 F. Supp. 609, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988). *See also Bryant v. Winston*, 750 F. Supp. 733 (E.D. Va. 1990) (the inadvertent or negligent opening of an occasional legal letter is not actionable).

As discussed in *Wolff*, *Kaufman*, and *Bruscino*, in order for privileged attorney-client correspondence to receive the special treatment of being opened only in the inmate's presence, the envelope must be clearly marked with a warning that the letter is "legal mail," "privileged legal correspondence," or some similar notice that draws attention to its confidential nature. The mere fact that an envelope bears the return address of a law office is not sufficient to alert prison

officials that the contents are privileged and should be opened only in the presence of the prisoner-recipient.

Here, Plaintiff concedes that the first two letters at issue (from West Town Law Office and Hamilton Law Office) were not marked with the "magical words of privileged/legal mail," but contained only the return address of the attorney and/or law office. (Doc. 1, p. 3). Nonetheless, he contends that prison officials in the mailroom could easily have verified that the sender was listed as a licensed attorney in the Sullivan's law directory, and should therefore have handled the items as legal mail. The applicable precedent does not require such extra steps, however. The *Wolff* court noted that it would be a "near impossible task of administration" for prison officials to be required to check whether a communication was truly from an attorney before determining how it should be handled. *Wolff*, 418 U.S. at 576-77. Further, not every letter from a law office represents privileged attorney-client communications. *See Kaufman*, 419 F.3d at 686. Because these two envelopes were not marked in such a way as to identify them as containing privileged legal correspondence, the mailroom officials (John/Jane Doe #1 and #2) did not violate Plaintiff's constitutional rights by opening them and handling them like any other regular mail.

Plaintiff's package from the Moran Law Group, however, was properly marked with the statement, "ATTORNEY/CLIENT CORRESPONDENCE, OPEN IN INMATE'S PRESENCE ONLY." (Doc. 1, p. 4). That information was sufficient to inform mailroom staff that they should not open the item until Plaintiff was present, yet they failed to follow that procedure. When Plaintiff received the package, it had already been opened and was taped back together. This example could form the basis for a constitutional claim, if the facts indicated that the opening was more than an inadvertent or isolated incident, and if Plaintiff's litigation activity was

prejudiced in some way. The Complaint, however, does not demonstrate a pattern of interference with properly marked legal mail, since this was the only time an item marked as attorney/client mail was opened.

Further, while Plaintiff assumes that the John/Jane Does read his privileged material, he does not set forth any facts to demonstrate that they did. Nor does he explain how the opening of this package prejudiced, hindered, or prevented his access to the courts. This is a necessary element in order to state a constitutional claim. *See Guajardo-Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010) ("whether the unjustified opening of [attorney mail] is a violation of the right of access to the courts or merely, as intimated in *Kaufman* and held in *Gardner*, a potential violation .... we think [as with claims challenging the adequacy of a prison's library or legal assistance program] there must b[e] a showing of a hindrance") (citing *Gardner v. Howard,* 109 F.3d 427, 430-31 (8th Cir.1997)); *Kaufman*, 419 F.3d at 686 (prisoner "offered no evidence that his ability to litigate any matter" was affected by the opening of mail from attorneys).

For these reasons, **Count 2** fails to state a claim upon which relief may be granted, and shall be dismissed without prejudice.

### Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Wilkerson for further consideration. Plaintiff has informed the Court that in his counsel motion, he mistakenly stated that he has been IDOC custody since September 1993, when in fact he was not transferred to IDOC custody until September 1996. (Doc. 4, p. 2).

### Disposition

**COUNT 2** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **ROWALD, MAYER, WANDRO, OAKLEY, JONES, LASHBROOK,**

**PHOENIX, JOHN/JANE DOE #1,** and **JOHN/JANE DOE #2** are **DISMISSED** from this action without prejudice. All claims against **BALDWIN** in his individual capacity are **DISMISSED** without prejudice.

As to **COUNT 1,** Plaintiff has neither sought nor been granted leave to proceed *in forma pauperis* in this action,[1] and the Court will not automatically appoint the United States Marshal to effect service of process upon Defendants **BRADLEY** and **BALDWIN (official capacity only).** If Plaintiff desires to request the appointment of the United States Marshal to serve process on these Defendants, **IT IS ORDERED** that Plaintiff **SHALL FILE** a Motion for Service of Process at Government Expense, within 28 days of the date of entry of this order (on or before **November 29 2017**). The Clerk of Court is **DIRECTED** to mail to Plaintiff the Court's Pro Se Litigant Guide, containing forms and instructions for filing said motion.

If Plaintiff does not timely file a motion for service of process at government expense, it shall be Plaintiff's responsibility to have Defendants **BRADLEY** and **BALDWIN (official capacity only)** served with a summons and copy of the Complaint pursuant to Federal Rule of Civil Procedure 4.[2] Plaintiff is advised that only a non-party may serve a summons. FED. R. CIV. P. 4(c)(2).

If Plaintiff requests the appointment of the United States Marshal, the Clerk of Court shall prepare a summons and copies of the Complaint and this Memorandum and Order for each Defendant, and shall forward the same to the United States Marshal for service. If Plaintiff does

---

[1] Plaintiff would not qualify for *in forma pauperis* status in this action, because he has "struck out" and the Complaint does not demonstrate that he is under imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g). Plaintiff has had the following actions dismissed for being frivolous or for failure to state a claim upon which relief may be granted: *Santiago v. Clark*, Case No. 99-C-1834 (N.D. Ill., dismissed Apr. 12, 1999); *Santiago v. Walls*, Appeal No. 05-2674 (7th Cir., interlocutory appeal deemed frivolous and strike assessed July 20, 2006); *Santiago v. Battaglia*, Case No. 05-C-5874 (N.D. Ill., dismissed June 23, 2009).

[2] Federal Rule of Civil Procedure 4(m) provides that service on each defendant must be accomplished within 90 days.

not file a motion for service of process at government expense within 28 days as ordered, the Clerk shall then prepare a summons for each Defendant, and shall forward the summonses and sufficient copies of the Complaint and this Memorandum and Order to Plaintiff so that he may have Defendants served.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, if the United States Marshal is appointed to serve process pursuant to a motion by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file or disclosed by the Marshal.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will

not file a motion for service of process at government expense within 28 days as ordered, the Clerk shall then prepare a summons for each Defendant, and shall forward the summonses and sufficient copies of the Complaint and this Memorandum and Order to Plaintiff so that he may have Defendants served.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, if the United States Marshal is appointed to serve process pursuant to a motion by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file or disclosed by the Marshal.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 1, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**