IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **FABIAN SANTIAGO,** **#B79716,** | |
| Plaintiff, | |
| v. | Case No. 17-cv-989-SPM |
| **TYLER A. BRADLEY, et al.,** | |
| Defendant. | |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by defendants Tyler A. Bradley ("Bradley"), Rob Jeffries ("Jeffries")[1], Lyle Hawkinson ("Hawkinson") and Lt. Martin Matherly ("Matherly") (Doc. 194). Pursuant to the motion and supporting memorandum of law, defendants seek judgment as a matter of law on all of Santiago's claims (Docs. 194, 195). Alternatively, defendants seek dismissal of this action under the doctrine of qualified immunity (*Id.*). Additionally, defendants claim the action is barred against defendant Jeffreys and seek his dismissal under the doctrine of sovereign immunity. For the following reasons, the Court grants the Motion for Summary Judgment.

### PROCEDURAL BACKGROUND

On September 14, 2017, plaintiff Fabian Santiago ("Santiago") commenced this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights

---

[1] Rob Jeffries was appointed Acting Director of the Illinois Department of Corrections and substituted the previous Acting Director, John Baldwin as a defendant herein.

(Doc. 1). On November 1, 2017, following preliminary review pursuant to 28U.S.C. § 1915A, the Court issued an Order allowing plaintiff to proceed with the following claim:,

> Count 1: First Amendment claim against Bradley for confiscating Plaintiff's "prison legal news" publication without reasonable justification and against Baldwin, the Director of the Illinois Department of Corrections, in his official capacity only. (Doc. 6).

On December 19, 2017, Santiago filed an amended complaint; however, it had not yet gone through preliminary review pursuant to 28 U.S.C. § 1915 (Doc. 18). On April 4, 2018, Magistrate Judge Donald Wilkerson issued a Report and Recommendation regarding merit review of the amended complaint (Doc. 40).

On October 1, 2018, following a series of motions, objections, and rebuttals, an Order was entered adopting in part and rejecting in part the Report and Recommendation previously filed on April 4, 2018 (Doc. 73). At that time, the Court added Lyle Hawkinson as a defendant for a separate incident and indicated the following claim would proceed:

> Count 1: "First Amendment claim against Bradley **and Hawkinson** for confiscating Santiago's "prison legal news" publication without reasonable justification and **against the Illinois Department of Corrections Director Baldwin in his official capacity for implementing a policy and/or practice of confiscating inmate's publications.**" (*Id.*).

On October 12, 2018, Santiago sought leave to file second amended complaint (Doc. 80). On June 3, 2019, following preliminary review, an Order was entered granting in part and denying in part Santiago's second amended complaint (Doc. 113). Specifically, Lt. Martin Matherly was added as a defendant as was the following

second count:

> Count 2: First Amendment claim against Hawkinson and Matherly for confiscating Plaintiff's Abolitionist publication without reasonable justification and against the Illinois Department of Corrections Director Baldwin in his official capacity for implementing a policy and/or practice of confiscating inmate's publications (*Id.*).

As such, Santiago's claims increased from one count to two; however, those counts can be broken into five separate First Amendment allegations that various IDOC personnel wrongfully denied him access to publications he ordered (*Id.*). First, that Bradley confiscated Santiago's November 2016 PLN while he was incarcerated at Menard. Second, that Hawkinson confiscated the August 2017 PLN while he was incarcerated at Hill. Third, that Hawkinson confiscated the winter 2018 Abolitionist while he was incarcerated at Hill. Fourth, that Matherly confiscated the winter 2018 Abolitionist while he was incarcerated at Hill. Finally, Santiago claims Jeffreys, as Acting Director of IDOC, implemented the policy/procedure for confiscating inmate publications.

On February 22, 2021, defendants filed their motion for summary judgment on the merits of Santiago's claims, along with supporting memorandum of law (Docs. 194-195). On April 13, 2021, Santiago filed his response in opposition to motion for summary judgment (Doc. 201). On May 17, 2021, this matter was transferred to this Court (Doc. 205).

## STATEMENT OF FACTS[2]

Fabian Santiago ("Santiago") is an inmate in the Illinois Department of

---

[2] In an effort to exclude immaterial and irrelevant facts, this Court has prepared its own Statement of Facts based upon the briefs provided by the parties herein.

Corrections who is currently incarcerated at Hill Correctional Center ("Hill") (Doc. 1). Santiago was at Menard prior to being transferred to Hill in July 2017 (*Id.*).

Bradley has worked at Menard for 24 years in various capacities, including publications review officer at Menard from November of 2015 until April of 2017 (Doc. 201-9, pp. 35-36). In that capacity, Bradley preliminarily reviewed Santiago's November 2016 issue of PLN and completed the Publication Receipt and Course of Action Form on December 2, 2016, also known as the 211, advising Santiago that the publication was subject to review because it appears to: Encourage or instruct in the commission of criminal activity; Be otherwise detrimental to security, good order, rehabilitation, or discipline or it might facilitate criminal activity; Other – Safety and security (Doc. 195-2).

It is undisputed that the 211 Form was forwarded to Santiago, who had the option of requesting additional review or not (*Id.*). There is a 30-day stay on destruction of publications in case there is a delay in returning the document, which is supposed to happen within 7-days (*Id.*, p. 75). Santiago claims he filled out the form that very night and requested return of the PLN (Doc. 195-1, pp. 94-95). He testified that he placed the form on the cell bars forwarding it to the Publication Review Committee/person (*Id.*, p. 101). Santiago cannot verify whether the form was received or destroyed (*Id*). Santiago also filed a formal grievance regarding the publication on December 7, 2016 (Doc. 201-2). Bradley claims the form was never returned, so further review was not conducted (Doc. 201-9, p. 114). If the inmate does not tell the publication review committee what to do, at the end of the 30 days, the publication is destroyed, which is what happened to the November 2016 edition of PLN (*Id.,* p. 115).

Hawkinson began working at Hill in October of 1999 and retired on April 30, 2019 (Doc. 196-1, p. 13). Since 2014 or 2015 until his retirement, Hawkinson functioned as publication review chairperson at Hill (*Id.*, pp. 28-29). Santiago was transferred to Hill in July 2017 and filed a grievance on August 29, 2017 claiming that he did not receive his August 2017 issue of PLN (Doc. 195-1, p. 195; Doc. 201-3). The counselor's response to that grievance dated August 30, 2017 indicated that the publication review committee was currently reviewing the publication (Doc. 201-3). Santiago never received a 211 on the August 2017 PLN, and the only connections he could make to Hawkinson were the grievance response and a hearsay conversation another inmate, Ron Kliner, claimed to have with Hawkinson (Doc. 195-1, pp. 197-199). Hawkinson was not involved in the decision to review the August 2017 PLN for Santiago (Doc. 196-1, p. 81-83)

Hawkinson was involved in the review of Santiago's 2018 issue of the Abolitionist (*Id.*, p. 28). Hawkinson recalled checking the PUBS list, filling out the 211, that Santiago wanted to file a grievance almost initially, and that Santiago was concerned the publication remain intact (*Id.*, p. 84). Hawkinson generated a hall pass for Santiago and met with him on March 9th to process the publication (*Id.,* pp. 85-86). Hawkinson noted on the form that Santiago would grieve the issue (*Id.*, p. 87).

Following the meeting, Hawkinson submitted the Form 212 and his decision to conditionally approve the publication with the removal of certain pages was upheld by the chief administrative officer or warden (*Id.*, p. 88; Doc. 195-3). On October 11th, Hawkinson met with Santiago following the 212 review (*Id.*, p. 88).

Matherly began working at Hill in 2009 (Doc. 196-2, p. 16). At one time, he

functioned as a publication review officer at Hill with Hawkinson as chairman (*Id.,* p. 39). Matherly has no recollection of meeting or interacting with Santiago (*Id.,* p. 100). Matherly also had no recollection of any involvement with any of Santiago's publications in this complaint (*Id.,* p. 189). Although named in the lawsuit, Matherly does not recall being involved in any of Santiago's grievance processes (*Id.,* p. 193).

Santiago claims that Matherly "red-flagged" the Winter 2018 Abolitionist publication and indicates it was in the Grievance Officer's Report (Doc. 195-1, pp. 164-165). Santiago infers this because the Publication Review Committee consisted of Hawkinson and Matherly, so Matherly had to be the staff member who raised the concern to Hawkinson (*Id.*, p. 166). Santiago never had a conversation with Matherly anout the Winter 2018 issue of the Abolitionist (*Id.*, pp. 174).

## APPLICABLE LAW

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (citation and internal quotation marks omitted). In deciding whether a dispute exists, the Court must "construe all

facts and reasonable inferences in the light most favorable to the non-moving party." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015) (citation omitted).

Under Rule 56, the movant has the initial burden of establishing that a trial is not necessary. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). "That burden may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Id.* (citation and internal quotation marks omitted). If the movant carries this burden, the nonmovant "must make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (citation and internal quotation marks omitted). The nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [their] favor." *Id.* (citation and internal quotation marks omitted). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). "[S]peculation and conjecture" cannot defeat a motion for summary judgment. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). In addition, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

In deciding the motion, the Court cannot weigh conflicting evidence, assess the credibility of the witnesses, choose between competing inferences or determine the ultimate truth of the matter, as these are functions of the jury.

*Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCottrell v. White*, 933 F.3d 651, 657 (7th Cir. 2019). Instead, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014). It must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *McCottrell*, 933 F.3d at 658.

## ANALYSIS

Santiago claims that his First Amendment rights were violated when IDOC personnel denied him access to three separate publications: (1) the November 2016 issue of Prison Legal News; (2) the August 2017 issue of Prison Legal News; and, (3) the winter 2018 issue of the Abolitionist (Doc. 113). Santiago also claims that the Illinois Department of Corrections violated his rights by implementing the policy/procedure for confiscating inmate publications (*Id).*

"[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." (1979). Inmates clearly retain protections afforded by the First Amendment. *Pell v. Procunier,* 417 U.S. 817, 822 (1974) However, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security. *Pell v. Procunier,* 417 U.S. at 822–823.

The Supreme Court has held that when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine if the regulation is reasonably related to legitimate penological interests four factors must be examined: (1) whether a valid, rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it exists, (2) whether there are alternative methods of exercising the right that remain open to the inmate, (3) the impact of accommodating the right on staff, other inmates, and on the allocation of prison resources generally, and (4) the existence of alternatives suggesting that the prison exaggerates its concerns. *Id.* at 89-91.

The Seventh Circuit has noted that "Prisons have great latitude in limiting the reading material of prisoners." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009). However, "the arbitrary denial of access to published materials violates an inmates First Amendment rights". *Antonelli v. Sheahan,* 81 F.3d 1422, 1433 (7th Cir. 1996) (quoting *Martin v. Tyson,* 845 F.2d 1451, 1454 (7th Cir.) (per curium*), cert. denied,* 488 U.S. 863 (1988)).  In assessing the reasonableness of a prison restriction, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Singer v. Raemisch,* 593 F.3d 529, 534 (7th Cir. 2010) (citing *Overton v. Bazzetta,* 539 U.S. 126, 132 (2003)). The inmate challenging the reasonableness of a prison restriction ultimately bears the burden of disproving its validity. *Singer*, 593 F.3d at 534 (citing Overton, 539 U.S. 132).

## I. November 2016 Prison Legal News

When filling out the Form 211 entitled Publication Receipt and Course of Action, Bradley checked that the publication appears to: (1) Encourage or instruct in the commission of criminal activity; (2) Be otherwise detrimental to security, good order, rehabilitation, or discipline or it might facilitate criminal activity or be detrimental to mental health; or, (3) Other – Safety and Security (Doc. 195-2). Specifically, Bradley referenced the article on pages 26-27 that advocate[s] and encourage[s] hunger strike by prison inmates (*Id.*).

Considering the four elements of *Turner*, Bradley's preliminary assessment appears to invoke legitimate penological reasons. Additionally, Bradley testified in his deposition that approximately 200 inmates at Menard received the PLN, and if 100 to 200 of them participated in hunger strikes or encouraged others to participate, it would disrupt the institution, cause havoc, and could cause mental health problems as other inmates consider whether or not they should participate (Doc. 201-9, p. 109). As such, Bradley also thought the article was a safety and security concern (*Id.*).

Although Santiago claims he returned the form and requested a review of the publication, there is no evidence that Bradley ever received the form. To the contrary, Bradley testified that he never received the form (*Id.,* p. 115). Additionally, although Santiago filed a grievance about this matter, Bradley was not aware of it and did not look for a grievance as it was submitted prematurely (*Id.,* p. 116).

Finally, although Bradley admittedly performed a preliminary review of the publication, he did not conduct a full review as he testified that he did not receive the

Form 211 back from Santiago. As such, Bradley never recommended to the warden, who has the final decision-making authority, to withhold the November 2016 PLN.

For summary judgment, "[i]nferences and opinions must be grounded on more than flights of fancy, speculation, hunches, intuitions, or rumors." *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

In this case, Santiago has not provided any proof that Bradley received the returned Form 211 that requested review. Moveover, Santiago has not, and cannot, establish that the November 2016 PLN was withheld for any non-penological interest. Bradley testified regarding his thought-process and Santiago has not produced any evidence that his First Amendment rights were unconstitutionally limited or denied.

## II. August 2017 Prison Legal News

Santiago alleges that Hawkinson wrongfully denied him his copy of the August 2017 PLN. In July 2017, Santiago was transferred to Hill from Menard. Following his transfer, he learned (after speaking with another inmate) that the August 2017 PLN was under review. Santiago never received a Form 211 about his own PLN, he just claims that his copy was confiscated for several months without any notification and that he received it in either October or November 2017 (Doc. 195-1, pp. 186-187).

On August 29, 2017, Santiago filed a grievance, stating that he had not received his copy of August 2017 PLN, but was aware that another inmate's issue was under review by the publications review committee (Doc. 201-3). The counselor's

response on August 30, 2017 advised, "The Publication Review Committee ("PRC") is currently review[ing] this publication" (*Id.*).

Santiago inferred the grievance response to be an admission and/or acknowledgement that his publication was under review (Doc. 195-1, p. 194). Furthermore, another inmate told him that he just come from the PRC and had spoken with Hawkinson about the August 2017 PLN, so Santiago assumed that Hawkinson was responsible for his missing issue. However, Hawkinson denied having any involvement whatsoever with Santiago's August 2017 PLN. Furthermore, there were no documents by Hawkinson reflecting any involvement with said issue.

A defendant that is not personally responsible for any deprivation of an alleged constitutional right cannot be liable under § 1983. *Minix v. Canarecci,* 597 F.3d 824, 833 (7th Cir.2010). Indeed, "only persons who cause or participate in the violations are responsible." *George v. Smith,* 507 F.3d 605, 609 (7th Cir.2007). Because there is no definitive link between Hawkinson and Santiago's August 2017 PLN, a cause of action cannot be sustained.

### III. Winter 2018 The Abolitionist

Santiago next claims that Hawkinson and Matherly were involved in the review of his winter 2018 issue of the The Abolitionist. On March 9, 2018, Hawkinson met with Santiago regarding The Abolitionist. Hawkinson testified that the publication had been received by the PRC, so he sent a pass to Santiago for a meeting to process Form 211, which was his general procedure (Doc. 196-1, pp. 20-21).

The Publication Receipt and Course of Action (Form 211) prepared by Hawkinson on March 9, 2018 for The Abolitionist – Winter 2018 indicated it was

approved conditionally – Remove pages 1, 2, 12 (Doc. 195-3). In response, Santiago advised that he would grieve the issue (*Id.*). Although Santiago did not check the box requesting review, Hawkinson prepared a Form 212, noting that the issue was on PUBS and that it was conditionally approved with the removal of pages 1, 2, 12 (*Id.*). On October 10, 2018, the Chief Administrative Officer, or warden, concurred in Hawkinson's conditional approval (*Id.;* Doc. 196-1, p. 88).

On October 11, 2017, Hawkinson had a second meeting with Santiago to discuss the review upholding the conditional approval of The Abolitionist (Doc. 196-1, p. 89). On June 27, 2019, after Hawkinson's retirement, Santiago filled out the bottom part requesting that the publication be sent to an address in Galesburg (*Id.,* pp.90-91).

Admittedly, Hawkinson conditionally approved the Winter 2018 issue of the Abolitionist, with the removal of pages 1, 2, 12. Hawkinson testified that this document was on the PUBS list, which at the time was a database of publications with decisions of review by wardens of the office of inmate issues and the central publication review committee (*Id.,* p. 55). Hawkinson always checked if a document was on the PUBS list as it abbreviated the review since someone else has already made a decision (*Id.,* pp. 110-112).

Hawkinson recalled having a general discussion with Matherly about the Winter Abolitionist Publication being conditionally approved with the removal of certain pages for the safety and security of the institution (*Id.,* p. 114). Matherly does not recall ever directing Hawkinson to review a publication and stated that Hawkinson conducted the majority of the reviews as he was the chairman (Doc. 196-

2, pp. 186-187). Matherly does not recall any specific involvement with Santiago's publication review and his signature was not on the Form 211 or Form 212 for the Winter 2018 Abolitionist (*Id.,* pp. 188-189).

As hereinbefore mentioned, a defendant that is not personally responsible for any deprivation of an alleged constitutional right cannot be liable under § 1983. *Minix v. Canarecci,* 597 F.3d 824, 833 (7th Cir.2010). Indeed, "only persons who cause or participate in the violations are responsible." *George v. Smith,* 507 F.3d 605, 609 (7th Cir.2007). Because there is no definitive link between Matherly and Santiago's Winter 2018 Abolitionist, cause of action against Matherly cannot be sustained. Additionally, Hawkinson preliminarily reviewed the publication and advised Santiago that it was on the PUBS list and was conditionally approved. The warden made the ultimate decision when he concurred with Hawkinson's determination.

### IV.  Qualified Immunity

Although this Court feels that summary judgment is appropriate on other grounds, the defense has also asserted qualified immunity (Doc. 194-195). The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); see also *Ulichny v. Merton Cmty. Sch. Dist.,* 249 F.3d 686, 706 (7th Cir. 2001). It is a defense available to officials with discretionary or policymaking authority when sued in their individual capacities under § 1983. *Leatherman v. Tarrant County Narcotics*

Page 14 of 17

*Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993); *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000).

The qualified immunity defense consists of two prongs, both of which Santiago must overcome to defeat a qualified immunity defense: 1) whether a constitutional right would have been violated on the facts alleged; and 2) whether the constitutional right was "clearly established" at the time of the official's alleged misconduct. *See, e.g., Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008). This is, in almost every case, a high evidentiary bar. Under current Supreme Court precedent, "[c]ourts may decide qualified immunity cases on the ground that a defendant's action did not violate a clearly established right without reaching the question of whether a constitutional right was violated at all." *Pearson*, 555 U.S. at 226.

In order to prevail, Santiago must demonstrate a violation of his clearly established rights under the First Amendment in order to defeat the qualified immunity defense. *Purvis v. Oest*, 614 F.3d 713, 717 (7th Cir. 2010). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Al–Kidd*, 563 U.S. at 741, 131 S.Ct. 2074 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *see also Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013) (cautioning that rights should not be defined in a highly general fashion). Santiago could demonstrate that his rights are "clearly established" by presenting a sufficiently analogous case which establishes that Bradley's, Hawkinson's and Matherly's conduct was unconstitutional, or by presenting evidence—even in the

absence of applicable precedent—that their conduct was so patently violative of the constitutional right that a reasonable official would know without guidance from a court. *Hope v. Pelzer*, 536 U.S. 730, 739–40 (2002); *Siebert v. Severino*, 256 F.3d 648 (7th Cir. 2001). He has done neither. Santiago has not shown that his rights were violated by these defendants, who were not shown to be involved in any review of one publication, who did not have the final decision-making ability of any publication, and who posited legitimate penological concerns and rationale for preliminary assessments. The first amendment right to publications for inmate is not absolute.

## V. Sovereign Immunity

Santiago's final claim is against Jeffreys "in his official capacity for implementing a policy and/or practice of confiscating inmate's publications." Rob Jeffreys is the Director of the Illinois Department of Corrections. As such, Santiago is precluded from asserting a claim against Jeffreys in his official capacity, as he is a state official who cannot be sued for money damages. See *Brandon v. Holt,* 469 U.S. 464, 469 (1985). Agencies of the state of Illinois, including the departments of corrections, enjoy Illinois' Eleventh Amendment sovereign immunity. *See Wittmer v. Peters,* 904 F.Supp. 845, 855 (C.D.Ill. 1995), *aff'd,* 87 F.3d 916 (7th Cir. 1996) (applying Eleventh Amendment sovereign immunity to dismiss claims for money damages against warden in his official capacity). In other words, the Eleventh Amendment expressly recognizes the limitations on the jurisdiction of the federal courts imposed by the sovereignty of the States; therefore, a non-consenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).

In an effort to circumvent this rule, Santiago attempts to argue for injunctive and declaratory relief against Jeffreys for his promulgating and enforcing the publication review process at Hill and Menard (Doc. 201, p. 24). The Eleventh Amendment does not prohibit a federal court from granting prospective injunctive relief to prevent a [state official's] continuing violation of federal law. *Ex Parte Young,* 209 U.S. 123 (1908). However, for this exception to apply, there must be a connection between the alleged unconstitutional conduct and the state official's exercise of his official authority. *Young,* 209 U.S. at 157. Sovereign immunity will prohibit relief against a state official when he or she is only a nominal defendant and the state is the real, substantial party in interest. *Id.*

Rob Jeffreys was appointed Director of the Illinois Department of Corrections in May 2019, well after all of these alleged incidents occurred.[3] Santiago did not submit any evidence as to how Jeffreys engaged in an unconstitutional act. As such, Jeffries is entitled to sovereign immunity.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment in its entirety. This action is **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: _____**

                                                 **/s/ Stephen P. McGlynn**
                                                 **STEPHEN P. McGLYNN**
                                                 **U.S. District Judge**

---

[3] See www.illinois.gov/news/press-release.200.30.html